CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 6 2015

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| HUI KUN LI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5:14-cv-00030 |
| | ) | |
| v. | ) | |
| | ) | By:  Michael F. Urbanski |
| JOHN E. SHUMAN, et al., | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendants' motions to dismiss plaintiffs' complaint for failure to state a claim and for lack of subject matter jurisdiction (Dkt. # 22 & 23).[1] For the reasons set forth below, the motions will be **GRANTED in part** and **DENIED in part**.

## I.

This is a dispute over an Asian restaurant. Plaintiffs Hui Kun Li and Jian Lu allege they were the sole members of Mimosa Asian Fusion, LLC, a limited liability company that operated a restaurant of the same name (hereinafter, "Mimosa I") in Winchester, Virginia. Compl., Dkt. # 1, at ¶¶ 31, 32. The complaint alleges that Li signed a five-year lease on January 23, 2008, id. at ¶ 29, and the restaurant opened its doors on September 18, 2008, id. at ¶ 30.

Plaintiffs claim that between April and June 2010, defendant John E. Shuman, owner of an unrelated business, Shuman's Flagcar Service, invested $35,000 into Mimosa I and began to work part-time at the restaurant. Id. at ¶¶ 33-35. The complaint alleges that by virtue of this financial

---

[1] Defendants also filed what is referred to on the docket as a "Supplemental Motion to Dismiss" (Dkt. # 40), but this appears to be simply an answer to the complaint. As this filing does not present any arguments for the court to consider, the motion will be **DENIED as moot**.

1

investment, Shuman became "a member and manager of Mimosa Asian Fusion, LLC."[2] Id. at ¶ 125. At Shuman's suggestion, Lu agreed to delegate bookkeeping and accounting responsibilities for Mimosa I to defendant Nicole Edwards, an employee of Shuman's Flagcar Service and part-time Mimosa I employee. Id. at ¶ 36. The complaint alleges that "on a nightly basis, Shuman would count the cash register and take possession of cash from the register allegedly to deliver the cash to Edwards [at her Shuman's Flagcar Service office] for accounting and bank deposit." Id. at ¶ 37. Plaintiffs claim that, over time, Shuman moved all of the Mimosa I financial records and information from the restaurant to Shuman's Flagcar Service and refused to give Li or Lu access to the records. Id. at ¶¶ 38-42. The complaint alleges that Shuman co-mingled Mimosa I funds with his own personal and business funds, id. at ¶ 44, used Mimosa I funds to pay personal debts, id. at ¶ 46, and, eventually, depleted the business funds, forcing Mimosa I to close its doors on May 20, 2011, id. at ¶¶ 226-232.

According to the allegations, Shuman then misrepresented his ownership interest in Mimosa in order to negotiate and secure a new five-year lease for the subject property beginning June 1, 2011, id. at ¶ 47, and misrepresented to the Frederick County Commissioner of Revenue that Mimosa I was closed for business, id. at ¶ 48, in order to open a new restaurant operating as a sole proprietorship. Specifically, plaintiffs claim that Shuman filed a Certificate of Fictitious or Assumed Name in Frederick County Circuit Court on May 25, 2011 for "Mimo's Asian Fusion," listing himself as owner and sole proprietor. Id. at ¶ 49. Plaintiffs claim that Shuman obtained a business license, id. at ¶ 120, and began conducting business as Mimo's Asian Fusion beginning in June 2011 at the same physical location where Mimosa I had operated, and that he repeatedly sought police

---

[2] The complaint states there is nothing in writing to memorialize the parties' agreement to that effect, id. at ¶ 116, and that Shuman never registered himself with the Virginia Alcohol Beverage Control Board or co-signed plaintiffs' lease, despite requests that he do so, id. at ¶¶ 114-15. Nevertheless, taking plaintiffs' factual allegations as true, the court will assume that Shuman was a member and manager of Mimosa I for purposes of this analysis. Additionally, although the complaint at times refers to Shuman as a "partner" rather than a "member," see, e.g., id. at ¶ 113, it is clear that the relevant business entity, Mimosa I, operates as a limited liability company, not a partnership.

2

assistance in removing Lu from the premises.  Id. at ¶ 51; see also id. at ¶¶ 56-57, 122-23.

Thereafter, on June 1, 2012, Shuman allegedly obtained another business license and formed a new

limited liability company, Mimosa Restaurant, LLC (hereinafter, "Mimosa II"), of which he was the

sole member, and which operated as a restaurant at the same physical location as Mimosa I.  Id. at

¶¶ 148-49.

Plaintiffs allege fifteen causes of action in their complaint filed on July 8, 2014:

- Count 1:  Trademark Infringement in violation of 15 U.S.C. § 1114 (infringing marks "Mimo's Asian Fusion" and "Mimosa Restaurant, LLC") (defendants Shuman and Mimosa II)

- Count 2:  Trademark Infringement in violation of 15 U.S.C. § 1114 (infringing marks ▮▮▮▮▮▮ and ▮▮▮▮▮▮ (defendants Shuman and Mimosa II)

- Count 3:  Conversion (into Mimo's Asian Fusion) (defendant Shuman)

- Count 4:  Conversion (into Mimosa II) (defendant Shuman)

- Count 5:  Breach of Fiduciary Duty (violation of June 10, 2011 state court order) (defendant Shuman)

- Count 6:  Breach of Fiduciary Duty (violation of November 15, 2011 and December 7, 2011 state court orders) (defendant Shuman)

- Count 7:  Wrongful Distribution of Properties in violation of Virginia Code § 13.1-1036 (defendant Shuman)

- Count 8:  Breach of Fiduciary Duty in violation of Virginia Code § 13.1-1024.1(A) (defendant Shuman)

- Count 9:  Breach of Duty of Loyalty (defendants Shuman and Edwards)

- Count 10:  Conspiracy to Injure a Business (defendants Shuman and Edwards)

- Count 11:  Fraud (defendant Shuman)

- Count 12:  Constructive Fraud (defendant Shuman)

- Count 13:  Gross Negligence (defendants Shuman and Edwards)

- Count 14:  Civil Conspiracy (defendants Shuman and Edwards)

3

- Count 15: Misappropriation of Trade Secrets in violation of Virginia Code § 59.1-336 (defendants Shuman and Mimosa II)

Defendants initially moved to dismiss the complaint for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and for improper venue pursuant to Rule 12(b)(3). See Dkt. # 6. The court held a hearing on October 1, 2014, at which it became apparent that this dispute had been extensively litigated in state court and that additional issues may need to be addressed at the Rule 12 stage. By Order entered the same date, the court denied the pending motion to dismiss and gave the parties an opportunity to file and brief any supplemental motions to dismiss in light of the filing of the state court record.

Defendant Nicole Edwards filed a supplemental motion to dismiss (Dkt. # 22), in which she appears to assert that the court lacks subject matter jurisdiction over the claims against her because she is not named in any of the trademark infringement counts. Defendants Mimo's Asian Fusion, Mimosa II, and John E. Shuman also filed a supplemental motion to dismiss (Dkt. # 23) pursuant to Rule 12(b)(1) and 12(b)(6).[3] These motions are ripe for adjudication.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." Dist. 28,

---

[3] Although this motion is entitled "Amended Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(B)(6) and Motion to Dismiss the Complaint for Improper Venue Pursuant to Fed. R. Civ. P. 12(B)(3)," defendants raise no arguments whatsoever concerning venue in this filing. As such, any motion to dismiss pursuant to Rule 12(b)(3) will be **DENIED**. See W.D. Va. Civ. R. 11(c)(1).

United Mine Workers, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085–86 (4th Cir. 1979).

Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

Defendants also argue that the complaint fails to allege facts that permit the exercise of federal subject matter jurisdiction over certain defendants. For such challenges brought pursuant to Rule 12(b)(1), "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Thus, the motion will be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

### III.

Before turning to the merits of the pending motions to dismiss, the court will first address the concurrent state litigation. The dispute that is the subject of the instant litigation has been the subject of state court litigation dating back to 2011. At the court's request, the parties filed extensive state court records for the court's review. See Dkt. # 20 & 27. It appears from these records that the parties to this matter are also parties to Frederick County Circuit Court case number CL11-439, an action brought by Li and Lu against Shuman and Edwards. Li and Lu's claims were dismissed without prejudice, however, by order entered August 9, 2014,[4] on account of plaintiffs' failure to pay their share of the fees and expenses of the court-appointed Commissioner in Chancery and Special

---

[4] Plaintiffs filed this federal action on July 8, 2014, before their state court claims had been dismissed.

5

Receiver. See Dkt. # 27-47, 27-54. The case remains pending in state court on Shuman's counterclaim, which is set down for a jury trial scheduled to begin August 31, 2015.

Having reviewed the voluminous state court records, the court is satisfied that res judicata does not bar plaintiffs' claims in this case. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). Although the subject of the parties' state and federal litigation is largely the same, there has been no adjudication of plaintiffs' claims on the merits, presenting no bar to plaintiffs' raising them in the instant complaint. Id. (explaining that both issue preclusion and claim preclusion preclude parties from contesting matters they have had a full and fair opportunity to litigate).

Additionally, although no party has raised the issue specifically, the court has considered whether dismissal of this action would be appropriate in light of the pending state court litigation.[5] In making such a determination, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" govern. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)). "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. . . .'" Id. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). However, the Supreme Court has recognized that certain exceptional circumstances may warrant the dismissal of a federal suit due to the presence of a concurrent state proceeding. Id. at 818. Factors to be considered include whether a court has

---

[5] This is not a case in which plaintiffs' claims are barred by the Rooker-Feldman doctrine. See Martin v. Ball, 326 F. App'x 191, 194 (4th Cir. 2009) ("The Rooker-Feldman doctrine applies where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005))).

6

assumed jurisdiction over property, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. No single factor is determinative. Id. "'[T]he Colorado River doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals.'" New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1074 (4th Cir. 1991) (quoting United States v. SCM Corp., 615 F. Supp. 411, 417 (D. Md. 1985)). The determination requires "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." Colorado River, 424 U.S. at 818-19. "Only the clearest of justifications will warrant dismissal." Id. at 819. Weighing the considerations in this case, the court finds no such clear justification warranting dismissal.[6] With that, the court turns to the instant motions.

## IV.

### A.

All four defendants move to dismiss the thirteen state law claims raised in the complaint pursuant to Rule 12(b)(1). Edwards argues in her motion (Dkt. # 22) that the four claims in which she is named (Counts 9, 10, 13 and 14) should be dismissed because plaintiffs have "failed to allege federal subject matter jurisdiction against [her]," as she is not named in any of the trademark infringement counts, and plaintiffs have not raised any other "credible allegations in the nature of a federal claim" against her. Edwards' Mot. to Dismiss, Dkt. # 22, at 3.[7] Likewise, defendants

---

[6] This is especially true given the fact that plaintiffs' claims against defendants have been dismissed in state court. The court declines to make a determination at this juncture as to whether defendants' counterclaim against plaintiffs filed in this case on April 20, 2015, Dkt. # 42, should be dismissed in light of Shuman's pending counterclaim in state court, as that issue is not currently before the court. A hearing on plaintiffs' motion to dismiss defendants' counterclaim, Dkt. # 43, is scheduled to be heard before the undersigned on July 16, 2015.

[7] In support of this argument, Edwards points to paragraph 24 of the complaint as "expressly exempt[ing] defendant Nicole Edwards from alleged wrongdoing." Edwards' Mot. to Dismiss, Dkt. # 22, at 3. Paragraph 24, however, concerns personal jurisdiction, not subject matter jurisdiction. To be sure, paragraph 24 acknowledges that Edwards is

7

Mimo's Asian Fusion, Mimosa II, and Shuman argue in their motion (Dkt. # 23), that "any pendant state claims associated with the trademark claim [sh]ould be sent back to the state court for adjudication." Defs.' Mot. to Dismiss, Dkt. # 23, at 3.

"The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In their complaint, plaintiffs allege this court has federal question jurisdiction over the trademark infringement claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a),[8] and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367. Compl., Dkt. # 1, at ¶ 23. Section 1367 provides that in any civil action in which the court has original jurisdiction, such as this case, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

At base, the complaint in this case alleges that Shuman, with assistance from Edwards, took control of Mimosa I, converted its intellectual property and other assets to his own use, ran Mimosa I out of business, and opened a new restaurant, of which Shuman is sole owner, in the same location as Mimosa I using strikingly similar marks to Li's registered trademarks. Plainly, the state law claims—which include conversion, fraud, and breach of fiduciary duty—"derive from a common nucleus of operative fact" with the federal trademark claims, United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966), and the court has supplemental jurisdiction over them pursuant to § 1367.

Moreover, the court notes that under permissible party joinder rules, defendants may be joined in one action if (1) "any right to relief is asserted against them jointly, severally, or in the

---

not named in the trademark infringement claims. But this acknowledgement is not evidence that the court lacks subject matter jurisdiction over the remaining claims in which she is named.

[8] Plaintiffs appear to suggest in their response in opposition to Edwards' motion to dismiss that the court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Resp. in Opp. to Edwards' Mot., Dkt. # 28, at 2. However, there is no allegation of diversity jurisdiction in the complaint.

8

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Notwithstanding Edwards' assertions to the contrary, see Edwards' Mot. to Dismiss, Dkt. # 22, at 2-3, she is a proper defendant to this case despite the fact that she is not named in any trademark infringement counts, as the claims raised against her (Counts 9, 10, 13 and 14) arise out of the same transaction and occurrence and involve questions of law or fact common to all defendants.

Likewise, plaintiffs may be joined in one action if (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Thus, defendants' argument that any claims brought by Lu and Mimosa I are "barred under Rule 12(b)" because neither Lu nor Mimosa I has any trademark ownership rights, see Defs.' Mot. to Dismiss, Dkt. # 23, at 3, also fails.

Finally, defendants appear to argue that plaintiffs' damages claim is insufficient to show the amount in controversy is greater than $75,000 for jurisdictional purposes. Defs.' Mot. to Dismiss, Dkt. # 23, at 5. However, as plaintiffs assert this court has federal question jurisdiction over this matter—not diversity jurisdiction—the amount in controversy is irrelevant. See Compl., Dkt. # 1, at ¶ 23 (asserting jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a)).

For these reasons, defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) will be **DENIED**.

**B.**

Defendants argue that Mimo's Asian Fusion is "never identified in Plaintiff[s'] complaint as a legal entity subject to be a proper party in this court, or any others" and should be dismissed as a defendant. Defs.' Mot. to Dismiss, Dkt. # 23, at 1 ¶ 9. The court agrees. While the complaint

9

names Mimo's Asian Fusion as a defendant, it fails to identify it as a specific legal entity. Mimo's Asian Fusion appears to be a fictitious name through which Shuman conducted his restaurant business. See Compl., Dkt. # 1, at ¶ 49; see also Dkt. # 27-3. In any event, Mimo's Asian Fusion is not named in any counts of the complaint. As such, Mimo's Asian Fusion will be **DISMISSED** as a party defendant, and the Clerk will be directed to add to the docket in this case the following alias for defendant Shuman: John E. Shuman d/b/a Mimo's Asian Fusion.

**C.**

Defendants' remaining arguments appear to concern plaintiffs' failure to state claims for which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Neither of the motions to dismiss is a model of clarity. Both lack an accompanying brief required under Local Civil Rule 11(c)(1), and Edwards' three-page filing devotes only a single sentence to her Rule 12(b)(6) argument. Nevertheless, the court will address the sufficiency of plaintiffs' allegations count-by-count and, as set forth below, will **DENY in part** and **GRANT in part** defendants' Rule 12(b)(6) motions.

### 1. <u>Counts 1 and 2 (Trademark Infringement).</u>

The complaint asserts two claims of trademark infringement under the Lanham Act, 15 U.S.C. § 1114. Count 1 alleges Li owns the federal trademark "Mimosa Asian Fusion Restaurant," and that Shuman and Mimosa II used that mark, and/or a strikingly similar mark, without authorization. Compl., Dkt. # 1, at ¶¶ 52-79. Count 2 alleges Li owns the federal trademark of a "a self-created stylized font 'Mimosa' (" and that Shuman and Mimosa II used that mark, and/or a strikingly similar mark, without authorization. Id. at ¶¶ 80-111.

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege that: "(1) that [he] owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4)

10

that the defendant's use of the mark is likely to confuse consumers." Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012) (citing 15 U.S.C. § 1114); see also Harrell v. Colonial Holdings, Inc., 923 F. Supp. 2d 813, 820 (E.D. Va. 2013). The court finds the allegations set forth in Counts 1 and 2 of the complaint sufficient to state a claim under the Lanham Act.

Li alleges that he owns the trademark for the name "Mimosa Asian Fusion Restaurant," Compl., Dkt. # 1, at ¶¶ 53, 56-63, 69-74, and for the customized stylized font ![mimosa], id. at ¶¶ 81, 84, 88-93, both of which have been registered with the United States Patent and Trademark Office. Li asserts that Shuman, without authorization, used these marks, as well as marks that are strikingly similar, in conducting his business through Mimo's Asian Fusion and Mimosa II— specifically, on signage, menus, and advertisements. Id. at ¶¶ 56-63, 69-74, 84, 88-93. And, although not stated explicitly, there is no question based on the nature of the allegations in Counts 1 and 2 that Li claims defendants' use of the marks is likely to confuse customers.[9] See id. at ¶¶ 56-63 (alleging infringing use while conducting business under the fictitious name "Mimo's Asian Fusion" at the same physical location as Mimosa I); id. at ¶¶ 69-74 (alleging infringing use while conducting business as "Mimosa Restaurant, LLC" at the same physical location as Mimosa I); id. at ¶¶ 88-93, 101-06 (alleging infringing use of the identical mark ![mimosa] and strikingly similar mark ![mimos] while operating a restaurant business at the same physical location as Mimosa I).

---

[9] The Fourth Circuit has articulated nine factors relevant to the "likelihood of confusion" inquiry:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Rosetta Stone Ltd., 676 F.3d at 153 (citing George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009)).

11

In their motion to dismiss, defendants raise a number of purported defenses to these trademark infringement allegations. For example, defendants claim plaintiffs "cannot state a claim for trademark infringement when the record clearly shows they have no ownership interest in the trademark" and that "[n]one of the words Mimosa, Asian fusion, restaurant, or LLC are subject to any trademark regulation." Defs.' Mot. to Dismiss, Dkt. # 23, at 3. Additionally, defendants make references (without accompanying analysis) to the concepts of abandonment, judicial action, generic words, cancellation, permissive use, latches, estoppel, acquiescence, prior use, fair use, and good faith use. Id. at 9-13.

At the end of the day, defendants may well be able to assert a valid defense to the allegations raised in Counts 1 and 2 of plaintiffs' complaint. However, at this early stage of the litigation, the court is charged with determining whether the complaint contains sufficient facts to state a plausible claim to relief, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and the court finds Li has sufficiently alleged claims for trademark infringement in Counts 1 and 2. As such, defendant's motion to dismiss as to Counts 1 and 2 will be **DENIED**.

### 2. **Counts 3 and 4 (Conversion).**

Counts 3 and 4 of the complaint allege "conversion of business and properties of" Mimosa I by defendant Shuman. See Compl., Dkt. # 1, at ¶¶ 112-25, 130-51. "Conversion is the 'wrongful exercise or assumption of authority . . . over another's goods. . . .'" United States v. Moffitt, Zwerling & Kemler, P.C., 83 F.3d 660, 670 (4th Cir. 1996) (quoting United Leasing Corp. v. Thrift Ins. Corp., 247 Va. 299, 440 S.E.2d 902, 905 (1994) and citing McCormick v. AT & T Technologies, Inc., 934 F.2d 531, 535 (4th Cir. 1991)). Plaintiffs contend in Count 3 that Shuman filed a "Certificate of Assumed or Fictitious Name to establish a Mimo's Asian Fusion [restaurant] with a business address of 202 Grocery Avenue, Winchester, VA 22601, which address is identical to the business address of" Mimosa I; that he used that Certificate to apply for a new business license and

12

enter into a new lease for the subject property; that he surrendered Mimosa I's liquor license, transferring all stocks to a new license for Mimo's Asian Fusion; and that Shuman had the police physically remove Lu from the premises, thereby converting the business assets of Mimosa I into Mimo's Asian Fusion. Id. at ¶¶ 117-24. Similarly, in Count 4,[10] plaintiffs allege that Shuman then closed Mimo's Asian Fusion's business license and opened a new business license for Mimosa II, and that he surrendered the ABC license for Mimo's Asian Fusion and secured a new license for Mimosa II, converting the business and assets of Mimosa I, "as held in Mimo's Asian Fusion," into Mimosa II. Id. at ¶¶ 147-50.

"A person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." Simmons v. Miller, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001). Although Counts 3 and 4 claim all plaintiffs were injured as a result of Shuman's alleged conversion, see id. at ¶¶ 125, 151, plainly it is Mimosa I that has sustained the injury, as it was Mimosa I's business and assets that were allegedly converted. These two conversion claims, and any recovery thereunder, belong to Mimosa I, a limited liability company. See Little v. Cooke, 274 Va. 697, 710, 652 S.E.2d 129, 137 (2007).

"Like a corporation, a limited liability company is a legal entity entirely separate and distinct from the shareholders and members who compose it." Mission Residential, LLC v. Triple Net Prop., LLC, 275 Va. 157, 161, 654 S.E.2d 888, 891 (2008). In Virginia, "[t]he overwhelming majority rule is that an action for injuries to a corporation cannot be maintained by a shareholder on an individual basis and must be brought derivatively." Simmons, 261 Va. at 573, 544 S.E.2d at 674; see also Trivedi v. Pathak, No. 3:08CV3-HEH, 2008 WL 1758913, at *1-2 (E.D. Va. Apr. 16, 2008) (applying this rule to an LLC); accord Office of Strategic Servs, Inc. v. Sadeghian, 528 F. App'x 336,

---

[10] Although styled as a conversion count, much of Count 4 reads like a claim for breach of fiduciary duty, which cause of action is alleged in Counts 5, 6 and 8 and is addressed infra.

13

347 n.8 (4th Cir. 2013) ("We deal here with a limited liability company, but the analysis remains the same."). The statute governing limited liability companies in Virginia sets forth certain requirements for maintaining derivative actions:

> A. A member shall not commence or maintain a derivative proceeding unless the member fairly and adequately represents the interests of the limited liability company in enforcing the right of the limited liability company and is a proper plaintiff pursuant to § 13.1-1043.[11]
>
> B. No member may commence a derivative proceeding until:
>
> 1. A written demand has been made on the limited liability company to take suitable action; and
>
> 2. Ninety days have expired from the date delivery of the demand was made unless (i) the member has been notified before the expiration of 90 days that the demand has been rejected by the limited liability company or (ii) irreparable injury to the limited liability company would result by waiting until the end of the 90-day period.
>
> C. If the limited liability company commences a review and evaluation of the allegations made in the demand or complaint, the court may stay any derivative proceeding for such period as the court deems appropriate.

Va. Code Ann. § 13.1-1042. Additionally, the statute sets forth certain pleading requirements:

> In [a] derivative action, the complaint shall set forth with particularity the effort of the plaintiff to secure commencement of the action by a member or manager with the authority to do so or the reasons for not making the effort.

Va. Code Ann. § 13.1-1044; see also Fed. R. Civ. P. 23.1 (setting forth pleading requirements for derivative actions). The complaint in this case contains no indicia that plaintiffs have complied with

---

[11] Section 1043 provides:

> In a derivative action, the plaintiff shall be a member at the time of bringing the action and (i) shall have been a member at the time of the transaction of which he or it complains or (ii) his or its status as a member shall have devolved upon him or it by operation of law or pursuant to the terms of the articles of organization or an operating agreement from a person who was a member at the time of the transaction.

14

the pleading requirements for bringing a derivative action on behalf of Mimosa I. Therefore, Counts 3 and 4 will be **DISMISSED without prejudice.**

### 3. <u>Counts 5, 6 and 8 (Breach of Fiduciary Duty).</u>

Counts 5, 6 and 8 of the complaint all allege breach of fiduciary duty. In Count 5, plaintiffs allege that Shuman owed a fiduciary duty to Li, Lu and Mimosa I after being appointed by the Frederick County Circuit Court to serve as "guardian/custodian to safeguard the business and properties" of Mimosa I by order entered June 10, 2011, and that he breached that duty. Compl., Dkt. # 1, at ¶¶ 156-74. Similarly, Count 6 alleges Shuman breached a fiduciary duty that arose when the Frederick County Circuit Court "reaffirmed its appointment of Defendant Shuman as a guardian/custodian to safeguard the business and properties of" Mimosa I in its orders of November 15, 2011 and December 7, 2011. <u>Id.</u> at ¶¶ 179-206.

"To state a claim for breach of a fiduciary duty, a plaintiff must establish three elements: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) subsequent damages attributable to the breach." <u>DCG & T ex rel. Battaglia/Ira v. Knight</u>, No. 3:14-CV-067-JAG, 2014 WL 7272941, at *5 (E.D. Va. Dec. 18, 2014) (citing <u>Carstensen v. Chrisland Corp.</u>, 247 Va. 433, 443–44, 442 S.E.2d 660, 666 (1994)). In Virginia, "[a] fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." <u>Augusta Mut. Ins. Co. v. Mason</u>, 274 Va. 199, 207, 645 S.E.2d 290, 295 (2007) (citing <u>H–B Ltd. P'ship v. Wimmer</u>, 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979)).

The state court orders of June 10, November 15 and December 7, 2011, can in no way be construed as giving rise to a fiduciary relationship between Shuman and plaintiffs. The June 10, 2011 order requires Shuman, as the party currently in possession of the Mimosa I property, to properly maintain all business records and personal property pertaining to the parties' operation of

Mimosa I and to not remove any equipment or personal property from the premises. Dkt. # 20-2. The November 15, 2011 order reiterates the directive contained in the June 10th order and appoints a third-party as Commissioner in Chancery and Special Receiver to assist in the dissolution of the parties' business association. Dkt. # 20-4. The December 7, 2011 order stays that appointment, however, due to financial hardship to the parties, and directs that "[n]either party shall waste any documents or assets that were in place in May 2011," and "[t]he current restaurant shall continue to remain in the guardianship/custody of the Defendants[ ] per the June 8, 2011 order pending further court order." Dkt. # 27-1. To the extent the court did appoint Shuman as a guardian/custodian of Mimosa I as alleged in the complaint, no fiduciary duty owed by Shuman to the plaintiffs flows from the court's directives. A fiduciary relationship between Shuman and plaintiffs cannot be created by virtue of the fact that the court placed special confidence in Shuman.

At best, Counts 5 and 6 allege that Shuman violated three state court orders. Even if that were true, those allegations do not translate into an independent cause of action for breach of fiduciary duty. As such, Counts 5 and 6 fail to state a claim for which relief can be granted and will be **DISMISSED with prejudice**.

Count 8 alleges breach of fiduciary duty on account of Shuman's "failure to discharge a member's good faith business judgment in the best interests of" Mimosa I, in violation of Virginia Code § 13.1-1024.1(A). Compl., Dkt. # 1, at 47. Section 13.1-1024.1(A), which governs limited liability companies, provides that "[a] manager[12] shall discharge his or its duties as a manager in accordance with the manager's good faith business judgment of the best interests of the limited liability company."

"Virginia follows the majority rule that 'suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual

---

[12] The term "manager" is defined in this statute to include "any member that is participating in the management of the limited liability company." Va. Code Ann. § 13.1-1024.1(A).

shareholder claims.'" DCG & T ex rel. Battaglia/Ira v. Knight, No. 3:14-CV-067-JAG, 2014 WL

7272941, at *3 (E.D. Va. Dec. 18, 2014) (quoting Simmons, 261 Va. at 576, 544 S.E.2d at 675).

Indeed, nothing in this code provision imposes a duty between members of an LLC, or between a

member and manager of an LLC. Remora Investment, LLC v. Orr, 277 Va. 316, 322, 673 S.E.2d

845, 847 (2009). Li and Lu, therefore, have no standing to bring a direct action against Shuman for

breach of fiduciary duty pursuant to § 13.1-1024.1(A). See Simmons, 261 Va. at 576, 544 S.E.2d at

675 (declining to create an exception to this rule for closely held corporations). To the extent Count

8 intends to state a claim by Li and Lu individually against Shuman for breach of fiduciary duty, it

will be **DISMISSED with prejudice**.

While a breach of fiduciary duty claim pursuant to § 13.1-1024.1(A) can be brought

derivatively, plaintiffs have failed to comply with the pleading requirements for derivative actions, as

discussed above. See Va. Code Ann. §§ 13.1-1042, -1044; see also Fed. R. Civ. P. 23.1. To the

extent Count 8 intends to state a claim for breach of fiduciary duty on behalf of Mimosa I, it will be

**DISMISSED without prejudice**.

### 4. Count 7 (Violation of Virginia Code § 13.1-1036).

In Count 7, plaintiffs allege that Shuman wrongfully distributed monies belonging to

Mimosa I in violation of Virginia Code § 13.1-1036. Compl., Dkt. # 1, at ¶¶ 211-22. This code

provision states:

> If a member has received a distribution in violation of the articles of
> organization or an operating agreement or in violation of § 13.1-1035
> of this chapter, then the member is liable to the limited liability
> company for a period of two years thereafter for the amount of the
> distribution wrongfully made.

Count 7, as pled, fails to state a claim for which relief can be granted. Nowhere in the

complaint are articles of organization or an operating agreement mentioned, nor does the complaint

allege that Shuman received a distribution in violation of § 13.1-1035, which prohibits distributions

17

that would render the LLC unable to pay its liabilities. In any event, the statutory language itself establishes that any right of recovery for a violation of § 13.1-1036 belongs to the LLC, and as plaintiffs have not complied with the requirements for bringing a derivative action in this case, they cannot maintain such a claim on behalf of Mimosa I. Count 7 will therefore be **DISMISSED without prejudice.**[13]

### 5. Count 9 (Breach of Duty of Loyalty).

Count 9 alleges Shuman and Edwards breached their duty of loyalty to Mimosa I by systematically depleting funds from the restaurant's cash box and bank account. Compl., Dkt. # 1, at ¶¶ 238-40. Virginia courts have long recognized that "under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment. Subsumed within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment." Williams v. Dominion Tech. Partners, L.L.C., 265 Va. 280, 289, 576 S.E.2d 752, 757 (2003) (citing Horne v. Holley, 167 Va. 234, 241, 188 S.E. 169, 172 (1936) and Hilb, Rogal & Hamilton Co. of Richmond v. DePew, 247 Va. 240, 249, 440 S.E.2d 918, 923 (1994)). Plaintiffs, however, have not met the requirements for bringing a

---

[13] Defendants argue that Count 7 is barred by the statute of limitations. Defs.' Mot. to Dismiss, Dkt. # 23, at 4. Count 7 alleges that Shuman received wrongful distributions on June 4, 2010; September 3 and 18, 2010; February 7, 2011; March 17 and 28, 2011; and April 4 and 26, 2011. Compl., Dkt. # 1, at ¶¶ 213-20. Virginia Code § 13.1-1036 specifies a two-year recovery period for violations of this statute. As plaintiffs filed this federal action in July 2014, Count 7 may well be time-barred.

It is possible, however, that the statute of limitations was tolled during the pendency of plaintiffs' state court action, which was filed in 2011. See Va. Code Ann. § 8.01-229(E)(1). It is unclear to the court when, if ever, plaintiffs raised a claim under Virginia Code § 13.1-1036 in state court. The court cannot locate in the record before it the complaint that gave rise to the state court action in 2011. The parties have filed on the docket in this case a "Prayer for Injunctive Relief" dated June 3, 2011. Dkt. # 27-24. There is also a "Motion for Mandatory Injunction to Return All Business Records to Plaintiffs" with the same date. Dkt. # 27-25. Neither of these documents specifically alleges a violation of § 13.1-1036. Also in the state court records is a "Second Amended Pleading Under Rule 1:8 of the Supreme Court of Virginia" dated April 18, 2014, which does not appear to allege a violation of § 13.1-1036, Dkt. # 27-31, but there is "Complaint for Damages" dated May 28, 2014, which alleges a violation of § 13.1-1035(A)(1). Dkt. # 20-11, 27-37.

As the court is uncertain whether a claim under § 13.1-1036 was ever timely and properly raised by plaintiffs in state court, the court declines to dismiss Count 7 with prejudice at this time. Defendants may renew their state limitations argument at a later stage of the proceedings.

18

derivative action for breach of duty of loyalty on behalf of Mimosa I.  Accordingly, Count 9 will also be **DISMISSED without prejudice**.

### 6. <u>Counts 10 and 14 (Conspiracy)</u>.

Shuman and Edwards are named in two conspiracy counts in the complaint.  The first, Count 10, alleges that Shuman and Edwards conspired to injure Mimosa I by producing "many false reports and [by keeping] a false accounting record of Mimosa Asian Fusion, LLC with a net result favoring the financial condition of Defendant." Compl., Dkt. # 1, at ¶¶ 249, 251.  Plaintiffs assert that, as a result, Mimosa I "suffered a total loss of its business and assets." <u>Id.</u> at ¶ 252.  In Count 14, plaintiffs contend that Shuman and Edwards conspired to artificially inflate Shuman's equity in Mimosa I and falsely report income paid to Lu, causing Lu to incur "tax liabilities, penalties, and interest for salaries that were never paid as well as potential criminal or civil collection issues for unpaid tax." <u>Id.</u> at ¶ 300.

Virginia law recognizes two causes of action for conspiracy:  common law civil conspiracy and statutory business conspiracy pursuant to Virginia Code §§ 18.2-499, and -500.  <u>See</u> <u>Dunlap v. Cottman Transmission Sys.</u>, LLC, 287 Va. 207, 213-14, 754 S.E.2d 313, 316 (2014).  "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." <u>Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.</u>, 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995). Statutory business conspiracy, codified in Virginia Code § 18.2-499, makes it unlawful for "[a]ny two or more persons [to] combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any

19

lawful act," and § 18.2-500 sets forth damages to be paid to "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499."

> To recover in an action under these statutes, a plaintiff must establish: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff." Allen Realty Corp. v. Holbert, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984); accord CaterCorp,[ Inc. v. Catering Concepts, Inc.,] 246 Va. [22,] [ ] 28, 431 S.E.2d [277,] [ ] 282 [1993]. It is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, i.e., ill-will, hatred, or spite directed toward the plaintiff. Commercial Bus. Sys., Inc. v. BellSouth Servs., 249 Va. 39, 47, 453 S.E.2d 261, 266–67 (1995). Rather, a plaintiff must establish by clear and convincing evidence only that the conspirators acted with legal malice, i.e., "intentionally, purposely, and without lawful justification. Id. at 47, 453 S.E.2d at 267; accord Northern Va. Real Estate v. Martins, 283 Va. 86, 110, 720 S.E.2d 121, 133 (2012); Williams v. Dominion Tech. Partners, L.L.C., 265 Va. 280, 290, 576 S.E.2d 752, 757 (2003); Simmons v. Miller, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001).

Dunlap, 287 Va. at 214-15, 754 S.E.2d at 317. Under either theory of recovery—common law or statutory conspiracy—

> the plaintiff must first allege that the defendants combined together to effect a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." Consequently, in order to survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than "mere conclusory language." In addition, to survive a motion to dismiss, an allegation of conspiracy must include either an unlawful act or an unlawful purpose.

Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal citations omitted).

It is unclear from the face of the complaint in this case whether plaintiffs intend to assert causes of actions for common law civil conspiracy or statutory business conspiracy. Neither Count 10 nor Count 14 mentions Virginia Code §§ 18.2-499, or -500 specifically. Count 10 is entitled "Conspiracy by Defendants Shuman and Edwards to injure a business." Count 14 is referred to as "Civil conspiracy;" however, plaintiffs assert in their response to defendants' motion to dismiss that

20

Count 14 is intended to state a claim under Virginia Code §§ 18.2-499, -500. See Pls.' Resp. to Mot. to Dismiss, Dkt. # 29, at 14.

In any event, Count 10 plainly alleges injury to Mimosa I and is therefore a derivative claim, which plaintiffs have failed to properly assert. Accordingly, Count 10 will be **DISMISSED without prejudice**. To the extent Count 14 alleges injury to Mimosa I as a result of Shuman and Edwards' alleged artificial inflation of Shuman's equity in the business, it, too, is a derivative claim. Additionally, and to the extent Count 14 states a claim for injuries to Lu individually, plaintiffs have failed to plead the "requisite concert of action and unity of purpose in more than 'mere conclusory language.'" Bay Tobacco, LLC, 261 F. Supp. 2d at 499. Count 14, in fact, contains no allegation whatsoever that Shuman and Edwards combined, associated, agreed, or otherwise conspired to injure Lu and/or Mimosa I. As such, Count 14 will be **DISMISSED without prejudice**.

### 7. **Counts 11 and 12 (Fraud / Constructive Fraud).**

Counts 11 and 12 assert claims for fraud. In Count 11, plaintiffs contend that Li and Lu, "in reliance upon Defendant Shuman's misrepresentation that he wanted to become a partner of Mimosa Asian Fusion, LLC, allowed him to run the business by taking care of all administrative issues including making filings to various entities, maintain[ing] books and records, and handl[ing] cash box and business checking account of the business," when in fact Shuman only desired to "plot and implement a conversion to steal the business and assets of Mimosa Asian Fusion, LLC." Compl., Dkt. # 1, at ¶¶ 257, 261; see also id. at ¶ 262. Count 12, entitled, "constructive fraud," contains allegations identical to those in Count 11. Id. at ¶¶ 267-74.

To prove a claim for actual fraud, plaintiffs must establish by clear and convincing evidence that Shuman made (1) a false representation, (2) of material fact, (3) intentionally and knowingly, (4) with intent to mislead, and that plaintiffs (5) relied on the misrepresentation and (6) were injured. See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 557–58, 507 S.E.2d 344, 346-

21

47 (1998). "Constructive fraud requires proof, also by clear and convincing evidence, 'that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of . . . reliance upon the misrepresentation.'" Id. at 553, 507 S.E.2d at 347 (quoting Mortarino v. Consultant Eng'g Serv., 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996)). Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity. "Thus, a complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal on a Rule 12(b)(6) motion." Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 980 (4th Cir. 1990). "Generalized, nonspecific allegations" are insufficient to state a valid claim for fraud. Ward's Equip., Inc. v. New Holland North Am., Inc., 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997).

Here, plaintiffs allege only that Shuman "expressed that he wanted to become a partner of Mimosa Asian Fusion, LLC and made some payments to Plaintiffs toward becoming a partner," Compl., Dkt. # 1, at ¶¶ 256, 267, and that Li and Lu relied on this misrepresentation to their detriment. Plaintiffs have not pled fraud (or constructive fraud) with particularity. Counts 11 and 12 contain no allegations as to when or where these statements by Shuman were allegedly made,[14] nor any other detail concerning the nature of the alleged misrepresentation. As such, Counts 11 and 12 will be **DISMISSED without prejudice**.

### 8. **Count 13 (Gross Negligence).**

Count 13 asserts a claim against Shuman and Edwards for "Gross Negligence in record keeping of a limited liability company." Compl., Dkt. # 1, at 57. Plaintiffs allege that Shuman and Edwards shared a duty to keep accurate accounting records, that they breached that duty and "have negligently kept the business accounting records" of Mimosa I, and, as a result, "the business account record of Mimosa Asian Fusion, LLC is highly inaccurate and need[s] to be sorted by an

---

[14] Defendants argue these claims are barred by the statute of limitations. Defs.' Mot. to Dismiss, Dkt. # 23, at 4. They may well be. However, without knowing when any misrepresentations were allegedly made, the court cannot say with certainty that these claims are time-barred.

22

accounting professional." Compl., Dkt. # 1, at ¶¶ 280-282. Plaintiffs claim damages as a result of "not knowing the true financial condition of the business until substantial amount of legal fees are spent to sue for the records" as well as for "total loss of the business, built-out cost of the business, all personal property and all equipment" of Mimosa I. Id. at ¶ 283.

Count 13 fails to state a claim for which relief can be granted. As the Virginia Supreme Court has recognized:

> [T]here are three levels of negligence. The first level, simple negligence, involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another. Gossett v. Jackson, 249 Va. 549, 554, 457 S.E.2d 97, 100 (1995); Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212–13 (1984). The second level, gross negligence, is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person. This requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness. Koffman v. Garnett, 265 Va. 12, 15, 574 S.E.2d 258, 260 (2003); Griffin, 227 Va. at 321, 315 S.E.2d at 213; Ferguson v. Ferguson, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971). The third level of negligent conduct is willful and wanton negligence. This conduct is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Etherton v. Doe, 268 Va. 209, 213–14, 597 S.E.2d 87, 90 (2004) (quoting Griffin, 227 Va. at 321, 315 S.E.2d at 213); see also Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999).

Cowan v. Hospice Support Care, Inc., 268 Va. 482, 486-87, 603 S.E.2d 916, 918-19 (2004). The allegations in Count 13 that Shuman and Edwards "have negligently kept the business accounting records" of Mimosa I are not sufficiently egregious to "shock fair-minded persons" and therefore do not rise to the level of gross negligence.[15] Id. Additionally, to the extent Shuman and Edwards did engage in negligent recordkeeping, any injury would have been sustained by Mimosa I, requiring this

---

[15] Paragraph 283 of the complaint states that Shuman's conduct "is of the most egregious conduct of willful and wanton negligence." Compl., Dkt. # 1. To the extent plaintiffs intend for Count 13 to state a claim for willful and wanton negligence, it, too, fails for the reasons stated.

23

claim to be brought derivatively. See Va. Code Ann. §§ 13.1-1042, -1044; Fed. R. Civ. P. 23.1. For these reasons, Count 13 will be **DISMISSED without prejudice**.

### 9. <u>Count 15 (Misappropriation of Trade Secrets)</u>.

Count 15 of the complaint alleges misappropriation of trade secrets, citing Virginia Code § 59.1-336. Specifically, the complaint alleges that "Lu has created a number of secret recipes compiled in an excel sheet format," which were marked as confidential and "placed in various locations in the kitchen of Mimosa Asian Fusion, LLC for the use of chefs and food preparers." Compl., Dkt. # 1, at ¶¶ 306-07. Lu further alleges that Shuman and Mimosa II took and used these recipes without Lu's authorization, thereby misappropriating Lu's trade secrets. Id. at ¶¶ 311-12.

> Generally, the law affords the owner of a trade secret protection "against the disclosure or unauthorized use of the trade secret by those to whom the secret has been confided under the express or implied restriction of nondisclosure or nonuse." <u>Kewanee Oil Co. v. Bicron Corp.</u>, 416 U.S. 470, 475, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). "The crucial characteristic of a trade secret is secrecy rather than novelty." <u>Dionne v. Southeast Foam Converting & Packaging, Inc.</u>, 240 Va. 297, 302, 397 S.E.2d 110, 113 (1990).

<u>MicroStrategy Inc. v. Li</u>, 268 Va. 249, 262, 601 S.E.2d 580, 588 (2004). Absolute secrecy is not required, however. "[T]he owner of a trade secret will not lose protection of the law by disclosing the secret to a licensee, an employee, or others, provided that the disclosure is made in express or implied confidence." Id. (citing <u>Dionne</u>, 240 Va. at 302, 397 S.E.2d at 113; and <u>Kewanee Oil Co.</u>, 416 U.S. at 475).

The Virginia Uniform Trade Secrets Act, codified in Virginia Code §§ 59.1-336 through -343, defines "trade secret" as:

> [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

24

> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code Ann. § 59.1-336. The complaint alleges that Lu created secret recipes that provide "unique culinary art in taste and display of great commercial value in competing with other restaurants." Compl., Dkt. # 1, at ¶ 309. It further alleges that each page of the spreadsheet containing these secret recipes prominently stated: "[I]nformation is confidential, cannot be shared without the consent of the original owner." Id. at ¶ 306. The complaint alleges that Lu authorized use of these recipes by the chefs and food preparers of Mimosa I, and that the recipes were placed in various locations of the Mimosa I kitchen for that purpose, id. at ¶ 307-08, but that Lu did not authorize use by Shuman, id. at ¶¶ 311-12. Lu has sufficiently pled the existence of a trade secret.

The second element of an offense brought under the Virginia Uniform Trade Secrets Act is misappropriation. MicroStrategy Inc., 268 Va. at 263, 601 S.E.2d at 588. The statute defines misappropriation as:

> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who
>
>> a. Used improper means to acquire knowledge of the trade secret; or
>>
>> b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
>>
>>> (1) Derived from or through a person who had utilized improper means to acquire it;
>>>
>>> (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

(3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(4) Acquired by accident or mistake.

Va. Code Ann. § 59.1-336. The complaint alleges that Shuman "has reason to know that the secret recipe was acquired by improper means," and that Shuman and Mimosa II "disclosed the trade secret to their employees and willfully benefiting the inherent value therefrom without expressed or implied consent by Plaintiff Lu." Compl., Dkt. # 1, at ¶¶ 310-11. Thus, Lu has stated a claim for misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act. As such, defendants' motion to dismiss Count 15 will be **DENIED**.[16]

### 10. Punitive damages.

Defendants argue that plaintiffs request punitive damages that exceed the amount allowable by law. Defs.' Mot. to Dismiss, Dkt. # 23, at 3, 5. Plaintiffs seek $400,000 in punitive damages in connections with each of Counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14, all of which will be dismissed for failure to state a claim. Although the issue is moot based on the court's rulings, defendants' position is nevertheless well-taken. Virginia Code § 8.01-38.1 caps punitive damages at $350,000. Had these counts survived the motion to dismiss, any coinciding surviving claim for punitive damages would have been limited to $350,000.

Plaintiffs also seek punitive damages in connection with Count 15, which survives defendants' Rule 12(b)(6) motion. This request, however, is limited to $100,000, well under the statutory cap. Plaintiffs can recover punitive damages for violations of the Virginia Uniform Trade Secrets Act "[i]f willful and malicious misappropriation exists." Va. Code Ann. § 59.1-338. The

---

[16] Defendants' argument concerning Count 15 centers on the fact that Virginia Code § 59.1-336, cited in the complaint, contains only definitions. Defs.' Mot. to Dismiss, Dkt. # 23, at 4. The court construes Count 15 as stating a claim under the Virginia Uniform Trade Secrets Act, Virginia Code §§ 59.1-336 et seq. Defendants' argument, therefore, is inapposite.

Case 5:14-cv-00030-MFU-JCH   Document 50   Filed 06/16/15   Page 26 of 27   Pageid#: 2567

court finds the allegations in Count 15 sufficient at this early stage of the litigation to state a claim for punitive damages.

As such, defendants' motion to dismiss will be **DENIED** as to the punitive damages claim alleged in Count 15 and is moot as to the punitive damages claims set forth in Counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14.

### 11. Attorney's fees.

Finally, defendants move to dismiss any request for attorney's fees, arguing "plaintiffs' counsel has represented to the Federal court that he is representing his clients on a contingency fee agreement and failed to provide such documents to the court." Defs.' Mot. to Dismiss, Dkt. # 23, at 3. This argument is, in a word, nonsensical. Attorney's fees are recoverable under certain circumstances for the claims that survive the Rule 12(b)(6) motion—Counts 1, 2 and 15—regardless of plaintiffs' fee arrangement with counsel. See 15 U.S.C. § 1117; Va. Code Ann. § 59.1-338. Thus, to the extent plaintiffs seek an award of attorney's fees in connection with Counts 1, 2 and 15, defendants' motion to dismiss will be **DENIED**.

### V.

Accordingly, defendants' motions to dismiss will be **GRANTED in part** and **DENIED in part**. As regards those claims that will be dismissed without prejudice, plaintiffs will be given leave to file any amended complaint that cures the defects noted herein within fourteen (14) days.

An appropriate Order will be entered.

Entered: 06-16-15

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

27